**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| TELUGU ASSOCIATION OF NORTH AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SRIKANTH POLAVARAPU, SUDHA KATRAGADDA, BRUHAT TECHNOLOGIES, INC.<br><br>Defendants. | ) | Case No. |

# COMPLAINT

This is an action involving fraud, deception, and a derogation of corporate bylaws. Plaintiff Telugu Association of North America, Inc. ("TANA") by counsel, for its complaint against defendants Srikanth Polavarapu ("Defendant Polavarapu"), Sudha Katragadda ("Katragadda"), and Bruhat Technologies, Inc. ("Bruhat") states as follows:

## NATURE OF ACTION

1. This is an action for fraud, breach of fiduciary duty, and related claims brought by TANA, a nonprofit Indo-American organization, against TANA's former Foundation treasurer for the removal of $3,646,150 from Foundation's bank account.

2. TANA is the oldest and largest Indo-American organization in North America, incorporated in 1978 as a not-for-profit organization. TANA's mission is to identify and address the social, cultural, and educational needs of the North American Telugu community. As a robust organization with thousands of members, the Bylaws of the Telugu Association of North America,

Inc. ("Bylaws") ensure that the organization and its members engage within an established framework. A copy of TANA's Bylaws is attached and incorporated herein as "**Exhibit A**."[1]

3. TANA also has a philanthropic arm, called the Foundation. The objectives of the Foundation are "to promote developmental projects in areas of the Telugu speaking people and improve educational, cultural, literacy, health, and quality of life of people of Telugu original including those residing outside of North America." *See* Exhibit A at Article X, Section 4.

4. TANA is comprised of the general body, Board of Directors, Executive Committee, and Foundation.

5. The Foundation is autonomous from the Board of Directors and Executive Committee, but accountable to the President and the Board of Directors. It is operated by four elected Foundation Donor Trustees (as defined by the Bylaws) and ten regular Foundation Trustees (as defined by the Bylaws). *See* Exhibit A at Article X, Section 1.

6. In order to complete the necessary goals and objectives of the Foundation, a Foundation Chair, Foundation Secretary, Foundation Joint Secretary, and Foundation Treasurer are elected every two years. *See* Exhibit A at Article X, Section 2(a); Section 2(f).

7. The Foundation Treasurer, as defined by the Bylaws:

> shall ensure that all monies donated to the Foundation are deposited into separate funds established for that purpose or for the purposes of the specific donor. Unless otherwise directed by the Board of Directors, the Foundation Treasurer shall maintain and manage the accounts under his/her control, and shall prepare and submit to the TANA Treasurer and to the Board of Directors quarterly accountings of all activity in all of said funds within thirty (30) days of the end of the quarter. The Board of Directors, with cause, can extend the deadline by a maximum of another 45 days. If the Foundation Treasurer fails to submit the quarterly financial reports within the prescribed time, the Chairman of the Board of Directors shall call

[1] TANA's Bylaws were subsequently amended on August 24, 2021 and April 15, 2025, but the version in effect during Defendant's tenure as Treasurer of the Foundation is attached hereto as Exhibit A. None of the subsequent amendments to the Bylaws impact the Foundation.

> for a meeting of the BOD to remove the Foundation Treasurer from that office and fill the resultant vacancy following the procedure in Article VIII, Section 8.b.

*See* Exhibit A at Article X, Section 2(d).

**JURISDICTION**

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as federal district courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000.

9. Under 28 U.S.C. §1332(c)(1), a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

10. TANA is a Maryland Corporation that was formed and whose articles of incorporation were created and executed in Maryland. Thus, TANA is a citizen of the state of Maryland.

11. TANA also maintains a principal place of business in Michigan; thus, TANA is also a citizen of the state of Michigan.

12. Defendant Polavarapu is an individual who resides at 2518 Bailey Ct., Irving, Texas. Thus, Defendant is a citizen of Texas.

13. Defendant Katragadda is an individual who resides at 2518 Bailey Ct., Irving, Texas. Thus, Defendant is a citizen of Texas.

14. Defendant Bruhat is a corporation that maintains a principal place of business at 8600 Freeport Parkway, Suite 225, Irving, TX 75063 and has also used the address of 12100 Ford Rd Suite # 132, Dallas, TX 75234. Defendant Bruhat is therefore a citizen of Texas.

## VENUE

15. Venue is proper in this Court pursuant to 28 U.S. Code § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

16. TANA is a Maryland not-for-profit corporation with its principal place of business located at 26233 Taft Road, Novi, Michigan 48374.

17. Defendant Polavarapu is an individual residing at 2518 Bailey Ct., Irving, Texas.

18. Defendant Katragadda is an individual residing at 2518 Bailey Ct., Irving, Texas.

19. Defendant Bruhat is a corporation that maintains a principal place of business at 8600 Freeport Parkway, Suite 225, Irving, TX 75063 and has also used the address of 12100 Ford Rd Suite # 132, Dallas, TX 75234.

## BACKGROUND

20. TANA is the oldest and largest Indo-American organization in North America, incorporated in 1978 as a not-for-profit organization. TANA's mission is to identify and address the social, cultural, and educational needs of the North American Telugu community.

21. TANA has various arms within the organization, which each section responsible for various tasks to aid the greater organization in achieving its mission. *See* Exhibit A, Article VI, Section 1 ("TANA shall be comprised of the General Body, Board of Directors ("BOD"), Executive Committee ("EC"), and Foundation.").

22. The Foundation was started to identify and fund charitable causes, projects to benefit the neediest among the Telugu people and the Foundation's funds are only to be used towards charitable causes except with the express authorization of the Board. "The Foundation is the policy making body for the objectives specified below in Section 4 of this article and is

autonomous in administration but accountable to the President and the Board of Directors. In accordance with the Bylaws in 2019, [which were in effect when Defendant Polavarapu assumed office, as the Bylaws have since been amended multiple times, including a revision on April 15, 2025, which changed the composition of the Foundation,] "the Foundation is operated by four (4) elected Foundation Donor Trustees, and ten (10) elected Regular Foundation Trustees." *See* Exhibit A, Article X, Section 1(a). Specifically, Foundation has the following objectives:

> a) To promote developmental projects in areas of the Telugu speaking people and improve educational, cultural, literary, health, and quality of life of people of Telugu origin including those residing outside of North America.
>
> b) To motivate people to participate in the above projects.
>
> c) To help needy Telugu people in case of an emergency and assist newly-arrived Telugu people to settle in North America.
>
> d) To help Telugu people in case of natural calamities.

**FOUNDATION TREASURER'S ROLES AND RESPONSIBILITIES**

23. Defendant Polavarapu was elected to the role of Foundation Treasurer in accordance with the Bylaws in 2019, which state, "The Foundation shall elect from among their number, a Chairperson ("Foundation Chair"), Foundation Secretary, Foundation Joint Secretary and Foundation Treasurer…" *See* Exhibit A, Article X, Section 2(a). As Foundation Treasurer, Defendant was a director of the Board of Directors, which is composed of fifteen (15) members: five (5) Directors directly elected by all eligible voters of TANA, two (2) Donor Directors elected by eligible Donor members of TANA, and eight (8) ex-officio members – Immediate Past-President, President, Executive Vice-President, Secretary and Treasurer of the Executive Committee and the Chairperson, Secretary, and Treasurer of TANA Foundation. *See* Exhibit A, Article VIII, Section 1.

24. Defendant Polavarapu, as Foundation Treasurer, was required to strictly adhere to the Bylaws in completing his duties to TANA. Specifically, as set forth in Article X, Section 2(d) of the Bylaws:

> ***Foundation Treasurer***: The Foundation Treasurer shall ensure that all monies donated to the Foundation are deposited into separate funds established for that purpose or for the purposes of the specific donor. Unless otherwise directed by the Board of Directors, the Foundation Treasurer shall maintain and manage the accounts under his/her control, and shall prepare and submit to the TANA Treasurer and to the Board of Directors quarterly accountings of all activity in all of said funds within thirty (30) days of the end of the quarter. The Board of Directors, with cause, can extend the deadline by a maximum of another 45 days. If the Foundation Treasurer fails to submit the quarterly financial reports within the prescribed time, the Chairman of the Board of Directors shall call for a meeting of the BOD to remove the Foundation Treasurer from that office and fill the resultant vacancy following the procedure in Article VIII, Section 8.b.

**DEFENDANTS' SURREPTITIOUS WITHDRAWAL OF OVER $3 MILLION DOLLARS FROM FOUNDATION'S BANK ACCOUNT**

25. Following a Foundation meeting held on August 23, 2024, the current Foundation Treasurer Vinay Maddineni discovered that over $3 million was transferred from the Foundation account between September 2022 through February 2024. Further investigation revealed that there were approximately 35 unauthorized wire transactions by the past Foundation Treasurer to non-TANA accounts totaling $3,646,150 that were made by Defendant.

26. Foundation's Chairman called for an emergency Board of Directors meeting, to assess the fraud perpetrated by Defendant Polavarapu. A demand was also made to Defendant Polavarapu to explain the transactions immediately.

27. On November 23, 2024, Defendant Polavarapu provided an email response, admitting to the dereliction of his authority over the Foundation bank account. A copy of Defendant's email is attached and incorporated hereto as "**Exhibit B**." Defendant Polavarapu admitted that, "I'm responsible and take complete ownership for having this money…"

28. Between September 2022 through February 2024, Defendant Polavarapu transferred $3,646,150 from the Foundation bank account maintained by Merrill Lynch to his business account, Bruhat Technologies, Inc., of which Defendant Katragadda is president.

29. When confronted, Defendant Polavarapu confirmed that Bruhat Technologies, Inc. is a company owned by Defendant Polavarapu and that "the transactions related to money sent…to have some additional savings generated for the Organization and there is no one involved with these transactions." *See* Exhibit B.

30. At no point in time was Defendant Polavarapu or any of the other defendants authorized by TANA to remove **any** funds from the Foundation bank account and at no point in time did TANA authorize Defendants to generate any additional savings related to the Foundation funds in the Merrill Lynch account.

31. TANA convened an emergency Board of Directors meeting on November 23, 2024, and subsequently on November 25, 2024. During the meeting on November 25, 2024, Defendant Polavarapu again **admitted** his wrongdoing and offered to pay back the money over time.

32. Defendant Polavarapu made seven payments to TANA in the total amount of $650,000. An accounting of the payments and dates of payment is attached and incorporated as "**Exhibit C**."

33. Defendant Polavarapu is currently physically residing in Dallas, Texas.

34. To date, Defendants have not paid back the full amount of funds they surreptitiously removed from Foundation's bank account.

35. Defendants did not have any authority under the Bylaws or applicable laws to remove $3,646,150 from Foundation's bank account.

36. Defendants' conduct violates the Bylaws and a breach of his duties to TANA as a director.

**FIRST CAUSE OF ACTION – FRAUD**

(against Defendant Polavarapu)

37. TANA incorporates by reference and realleges each and every allegation contained in Paragraphs 1-36 as though fully set forth herein.

38. Defendant Polavarapu lied to the Board by providing false financial documentation in order to evade the Board's suspicions relating to these underhanded activities with the Foundation's funds.

39. The Board relied on the misrepresentations presented by Defendant Polavarapu, who was in the best position to know the status of the Foundation finances and relied on those misrepresentations.

40. Based on Defendant Polavarapu's misrepresentations, TANA was damaged as $3,646,150 were removed from Foundation's bank account by Defendant, thwarting the organization's mission and endeavors on behalf of the Telugu people.

WHEREFORE, TANA requests judgment against Defendant Polavarapu in the amount of no less than $3,646,150, plus pre-judgment and post-judgment interest and costs, and such other relief as the Court deems appropriate.

**SECOND CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY**

(against Defendant Polavarapu)

41. TANA incorporates by reference and realleges each and every allegation contained in Paragraphs 1-40 as though fully set forth herein.

42. As Foundation Treasurer, Defendant Polavarapu owed a fiduciary duty to TANA.

43. As set forth in the Bylaws, Defendant Polavarapu was required to "ensure that all monies donated to the Foundation are deposited into separate funds established for that purpose or for the purposes of the specific donor." *See* Exhibit A at Article X, Section 2(d).

44. Defendant Polavarapu was further obligated to "maintain and manage the accounts under his control and…prepare and submit to the TANA Treasurer and to the Board of Directors quarterly accountings of all activities in all of said funds within thirty (30) days of the end of the quarter." *See id*.

45. Defendant Polavarapu was also required to "provide up-to-date financial statements for all accounts managed by the Foundation quarterly to the EC Treasurer and the Board of Directors." *See* Exhibit A at Article XII, Section 5.

46. As Foundation Treasurer, Defendant Polavarapu owed a fiduciary duty to TANA.

47. Through the conduct averred by Defendant Polavarapu relating to $3,646,150 from Foundation's bank account, Defendant breached his fiduciary duties to TANA.

48. Through his conduct relating to Foundation's account and by diverting $3,646,150 to his own company's bank account, Defendant Polavarapu engaged in self-dealing.

49. As a result of Defendant's breach of his fiduciary duty, he has improperly retained funds that belong to TANA and Foundation, to which he is not entitled to, and which he must return to TANA.

WHEREFORE, TANA requests judgment against Defendant Polavarapu in the amount of no less than $3,646,150, plus pre-judgment and post-judgment interest and costs, and such other relief as the Court deems appropriate.

**THIRD CAUSE OF ACTION – CONVERSION**

(against all Defendants)

50. TANA incorporates by reference and realleges each and every allegation contained in Paragraphs 1-49 as though fully set forth herein.

51. Defendants have no legal right to the $3,646,150 Defendant Polavarapu unilaterally and surreptitiously removed from the Foundation bank account between 2022 to 2024.

52. Defendants did not have authorization pursuant to the Bylaws to remove $3,646,150 from the Foundation bank account to an account under Defendant Polavarapu's sole and separate control.

53. Defendants intentionally interfered with TANA's possession of TANA's funds and resources, as maintained in the Foundation bank account.

54. Defendants' conduct has caused TANA the loss of $3,646,150, to which it is legally entitled.

55. Defendants converted Foundation's $3,646,150 for their own personal use in contravention of the Bylaws.

WHEREFORE, TANA requests judgment against Defendants in the amount of no less than $3,646,150, plus pre-judgment and post-judgment interest and costs, and such other relief as the Court deems appropriate.

**FOURTH CAUSE OF ACTION – UNJUST ENRICHMENT**

(against all Defendants)

56. TANA incorporates by reference and realleges each and every allegation contained in Paragraphs 1-55 as though fully set forth herein.

57. Defendants unjustly retained the benefit of removing $3,646,150 from the Foundation bank account, which has resulted in the loss of those funds to TANA.

58. Defendants' removal of the $3,646,150 is against the fundamental principles of justice or equity and good conscience.

59. Not only were Defendants enriched at the expense of TANA's loss of the funds in the Foundation account, but it would be unjust to allow Defendants to maintain the $3,646,150 they surreptitiously removed from Foundation's bank account.

WHEREFORE, TANA requests judgment against Defendants in the amount of no less than $3,646,150, plus pre-judgment and post-judgment interest and costs, and such other relief as the Court deems appropriate.

## FIFTH CAUSE OF ACTION – CIVIL CONSPIRACY

(against all Defendants)

60. TANA incorporates by reference and realleges each and every allegation contained in Paragraphs 1-59 as though fully set forth herein.

61. Defendants willfully and maliciously injured TANA by acting in concert to remove $3,646,150 from TANA Foundation's bank account into a bank account under their own dominion and control.

62. By doing so, Defendants injured TANA's reputation and ability to pursue its mission by removing funds raised, solicited, donated, and maintained for Foundation's activities.

63. The actions taken by Defendants were calculated and taken over a period of approximately two years, and the Defendants acted in concert to remove the funds from TANA Foundation's account to an account maintained by Defendant Bruhat, under the control of Defendants Polavarapu and Katragadda.

64. Each party in the group of defendants played an active and specific role: Defendant Polavarapu provided false documentation and updates to the Foundation and TANA boards about the status of the finances, while Defendant Bruhat maintained the funds, and Defendant Katragadda allowed the transactions as president of Bruhat Technologies, Inc.

65. As a result of Defendants' conduct, TANA has been damaged financially and its reputation has been severed harmed.

WHEREFORE, TANA requests judgment against Defendants in the amount of no less than $3,646,150, plus pre-judgment and post-judgment interest and costs, and such other relief as the Court deems appropriate.

Dated: May 9, 2025

Respectfully submitted,

*/s/ Joseph P. Griffith*
Joseph P. Griffith
Texas Bar No. 24045982
joseph.griffith@gtlaw.com
Charles R. Truslow
Texas Bar No. 24120672
charles.truslow@gtlaw.com
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3633

*Counsel for Telugu Association of North America, Inc.*